UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PETER KAUFER, | : | |
| Plaintiff, | : | Civil Action No. 06-4761 (JAP) |
| v. | : | **OPINION** |
| RED BANK LOCAL #0986 APWU, AFL-CIO, | : | |
| Defendants. | : | |

PISANO, District Judge.

This matter comes before the Court on a motion to dismiss for failure to state a claim upon which relief can be granted filed by defendant Red Bank Local #0986, APWU, AFL-CIO ("Defendant" or "Union").  Defendant alleges that Plaintiff's complaint is time-barred under the applicable statute of limitations.  For the reasons below, the Union's motion is granted.

**I.  Background**

A.  Factual Background[1]

Plaintiff is a member of the Union.  He has been an employee of the Postal Service since March of 1989, working as a custodian at the Red Bank Post Office.  Many years prior to his employment with the Postal Service, Plaintiff suffered a traumatic head injury that left him

---

[1] The facts set forth herein are taken from Plaintiff's Amended Complaint filed on March 16, 2007, and are presumed to be true for the purposes of this motion.

permanently injured and disabled. Plaintiff was hired at the Postal Service under a program for severely handicapped individuals sponsored by the Division of Vocational Rehabilitation for the State of New Jersey ("DVR"). When originally hired, Plaintiff was to be placed into a full-time position with reduced working hours with the goal that Plaintiff would gradually assume full-time responsibilities. Other accommodations promised Plaintiff included early work hours, rest time, and weekends off.

After Plaintiff's initial 90-day probationary period, Plaintiff arrived at Red Bank to assume his full-time duties and was told that another employee would be overseeing Plaintiff. Plaintiff, however, believed that this employee, in fact, filled the position that was supposed to be Plaintiff's, and instead Plaintiff was given part-time custodial duties. Sometime thereafter, this other employee died and his position was filled by yet another employee.

In November 1992, a representative from the DVR wrote a letter to the Postal Service stating that Plaintiff had been working as a part-time custodian but that the intent of the Postal Service and the DVR at the time of Plaintiff's hiring was that Plaintiff would be employed in a full-time position. The letter made clear that Plaintiff was qualified for full-time employment and that a certification to that effect had been submitted to the Postal Service in the past.

For the next six or seven years, Plaintiff repeatedly questioned his reduced hours and sought confirmation of his status as a full-time employee as well as enforcement of the working-hours accommodations agreed upon. In February 1995, Plaintiff wrote to the Postmaster of the Red Bank Post office requesting an increase in hours. In April 1995, a representative from the DVR similarly wrote the Postal Service requesting that Plaintiff be given full-time hours.

In October 1995, the Postmaster of Red Bank apparently "converted" Plaintiff to full-time

status. However, the conversion was shortly thereafter deemed a "mistake" and it was rescinded. In rescinding the conversion, the Postmaster explained that Plaintiff's "noncompetitive status applied only to his initial hiring and not to any subsequent career moves," such as conversion to full-time status. Amend. Compl at ¶ 23.

According to the Amended Complaint, "[a]t this juncture, . . . the representatives of [the Union] . . . sided with management regarding the 'conversion.'" *Id.* at ¶ 25. Plaintiff alleges that the Union took this position against him because "allowing the conversion [to full-time status] would have forced the Union to acknowledge that the plaintiff had been denied his full-time position since hiring. . . [and] the Union never insisted that Plaintiff be re-evaluated." *Id.*

Plaintiff continued to make numerous attempts over several years to obtain a full-time position with the agreed upon accommodations of early work hours and weekends off. In 1998, he wrote to the human resources manager and submitted various forms regarding the position he sought. A psychologist working with Plaintiff wrote to the Postal Service confirming that Plaintiff was capable of working a forty-hour week. Plaintiff wrote again to the Red Bank Postmaster in 2000, to no avail.

In May 2002, the Postal Service placed another employee into a full-time custodian position in the Red Bank Post Office with the hours Plaintiff had been requesting. In July 2003, Plaintiff submitted a letter from his physician advising that it was difficult for plaintiff to work afternoon hours later than 3:30 p.m. In response, the Postal Service sent Plaintiff to one of its own physicians, who opined that Plaintiff was medically qualified to perform his job, but the doctor recommended a change in work hours if possible.

In early 2004, one of the two full-time custodial positions in the Red Bank Post Office

became available.  However, Plaintiff was not offered this position, but instead remained part-time.  Plaintiff was also was advised that he would be assigned new work hours, but these new hours were contrary to the accommodations promised Plaintiff when he was hired (*i.e.,* early morning hours, weekends off).  Plaintiff sought assistance obtaining a full-time position and accommodations from the President of the Union, Joseph Shevlin.  According to the Amended Complaint, Mr. Shevlin "did nothing" to assist Plaintiff.  *Id.* at ¶ 48.

The Amended Complaint states that Plaintiff made other requests to the Postal Service through 2004 and beyond in an attempt to secure a full-time position and appropriate working hours.  As of the filing of this action, the Postal Service has failed to grant him full-time status and provide the agreed upon working-hour accommodations.  With respect to the Union, Plaintiff alleges that the Union's "actions" -- its refusal to assist Plaintiff with his grievance --  have denied Plaintiff "valuable benefits and caused him extreme mental anguish."  *Id.* at ¶ 61.  Specifically, Plaintiff contacted the Union "[o]n several occasions . . . to seek their assistance in securing his accommodation with his original time slot and full-time regular status, [but] [t]he Union has refused to take up his cause or otherwise assist him in grieving this matter." *Id.* at ¶ 63.  Recent requests for assistance to the Union have been denied, the Union telling plaintiff "again" that the Union "would not move forward on a grievance."  *Id.* at ¶ 64.

B.  Procedural History

On October 4, 2006, Plaintiff filed a complaint against the "American Postal Workers Union, AFL-CIO."  Plaintiff later amended his complaint to assert his claims against defendant Union.  Plaintiff's Amended Complaint contains one count alleging that the Union failed to carry out its duty of fair representation to Plaintiff as a member of the Union.  The suit seeks

compensatory and punitive damages

## II. Legal Discussion

A.  Standard Under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  Recently, the United States Supreme Court refashioned the applicable standard on a Rule 12(b)(6) motion.  In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007), the Court found that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 1964-65 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." *Twombly*, 127 S. Ct at 1965 (internal citations and footnote omitted).

B.  Analysis

Defendant argues that Plaintiff's complaint is untimely under the relevant statute of limitations and, therefore, should be dismissed.  It is well-established that an affirmative defense such as the expiration of the statute of limitations may provide a basis for dismissal on a Rule

12(b)(6) motion in those situations where the defense is apparent on the face of the complaint. *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006) (expiration of the statute of limitations an affirmative defense that may support dismissal if apparent on face of the complaint); *Robinson v. Johnson*, 313 F.3d 128, 135 (3rd Cir. 2002) (limitations defense may be raised on a motion under Rule 12(b)(6) "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations") (internal citations and quotations omitted).

      The parties do not dispute that the applicable limitation period in this case is six months as found in the National Labor Relations Act, 29 U.S.C. § 160(b). Defendant argues that Plaintiff's claim should be dismissed for failure to bring the claim within this six-month period. Plaintiff, on the other hand, argues that his claims are timely under both the six-month limitations period as well as the "continuing violation" doctrine.

      The Third Circuit has held that the six-month statute of limitations in a case such as this begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir.1986). Plaintiff's claim in this case centers on his efforts, since the end of his probationary period in 1989, to obtain full-time status at the Red Bank Post Office, as well as his efforts to obtain working hours are consistent with the accommodations promised to him when he was hired. He alleges that the Union failed to assist him and move forward on a grievance on either issue.

      It appears from the Amended Complaint that the first instance that Plaintiff was denied assistance from the Union was in 1995. This is when Plaintiff's conversion to full-time status

was "revoked" and the Union "sided with management." Amend. Compl at ¶ 25. Later, in 2004, the Union failed to take action on Plaintiff's behalf when Plaintiff sought assistance regarding two issues. The first issue involved a change in Plaintiff's working hours. Plaintiff was assigned new hours that were inconsistent with the early morning/weekends off schedule promised Plaintiff as an accommodation for his disability. The second issue was the Postal Service's failure to promote him to full-time status when such a position had become available. However, although the Amended Complaint details only these specific instances where Plaintiff requested assistance from the Union, the Amended Complaint asserts in a general way that Plaintiff contacted the Union "[o]n several occasions" seeking their assistance in returning to his original work hours and securing full-time status.

      Based on the allegations in the Amended Complaint, the latest that Plaintiff's cause of action could have accrued against the Union was "[i]n or around" March 2004, when Plaintiff wrote to a Union representative seeking assistance with regard to obtaining full-time status and restoring his original work schedule and the Union "did nothing to assist [Plaintiff]." Amend. Compl. at ¶ 48. The assistance Plaintiff sought from the Union in 2004 relates to an issue (*i.e.* full-time status and accommodations) that appears to be distinct from the issue raised in 1995 (*i.e.*, revocation of full-time status); therefore, 2004 is the latest that Plaintiff knew or should have known of the acts that constituted the most recent violation and of any resulting injury. While it is true that Plaintiff continued to seek assistance from the Union after 2004 in regard to full-time status and accommodations, there is no indication that these requests were anything more than attempts to get the Union to change its position and, therefore, the requests merely stem from the Union's original refusal in 2004. Indeed, the Union's refusal of each subsequent

request by Plaintiff for assistance with matters for which assistance was previously sought does not constitute a discrete breach of duty on the part of the Union such that the limitations clock begins to run anew. *Accord Zdziech v. DaimlerChrysler Corp.*, 114 Fed. Appx. 469, 472 (3d Cir. 2004) ("The failure to act upon receipt of a letter requesting reinstatement is not a discrete act of discrimination and does not restart the statute of limitations."). To allow a party to reset the statutory time period for the filing of an action simply by writing another letter would completely undermine the intent of a statute of limitations. *Id.*

      Consequently, the letters that Plaintiff has identified in opposition to this motion do not help his cause. For example, Plaintiff, in arguing his action is not time-barred, refers to a letter of May 16, 2006, in which he requests from the Union "assistance in grieving" the issue regarding Plaintiff's work hours. Certification of Peter Kaufer ("Kaufer Cert." at Ex. A).[2] Plaintiff argues that because this letter was written within the six-month period prior to the filing of the complaint, his action is timely. However, such an argument ignores the applicable standard, which provides that a cause of action accrues when a party first discovers (or should discover) the wrongful acts and injury. As discussed above, the Amended Complaint is clear that Plaintiff sought and was apparently denied assistance with regard to the issue of Plaintiff's work hours at least as far back as 2004. Accordingly, Plaintiff was aware of the Union's position on the issue more than two years prior to the filing of the complaint. Indeed, the May 16th letter expressly states that Plaintiff "*previously* tried to get the assistance of [the Union]" with regard to this issue. *Id.* (emphasis added). Simply put, the May 16th letter does not save Plaintiff's claim.

---

      [2]As matters outside of the pleadings, the Court did not rely on Plaintiff's certification or exhibits in reaching its decision. However, the Court mentions them only to note that had it considered them, the Court would have reached the same decision.

Nor can Plaintiff find refuge in the continuing violation doctrine. The continuing violations doctrine "is an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time." *Foster v. Morris*, 208 Fed. Appx. 174, 177-178 (3d Cir. 2006) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir.2001)). Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance the court will grant relief for the earlier related acts that would otherwise be time barred." *Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991). However, the continuing violations doctrine "does not apply when plaintiffs are aware of the injury at the time it occurred." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n. 6 (3d Cir.2003). Additionally, a continued failure to act does not constitute a continuing violation. *Cowell*, 263 F.3d at 292. Rather, the doctrine's focus is on affirmative acts by a defendant. *Id.*

In support of his argument that the continuing violation doctrine is applicable here, Plaintiff relies upon the decisions in *Brenner v. Local 514,* 927 F.2d 1283 (3d. Cir. 1991) and *Lewis v. Local Union No. 100*, 750 F.2d 1368 (7th Cir. 1984), both of which found that a union's repeated failure to refer a member out for employment was a continuing pattern of illegal conduct. However, both of those cases, unlike the present case, involved continuing affirmative acts by the defendants. This simply is not the case here. Indeed, as Defendant points out, to adopt plaintiff's continuing violation theory under the facts of this case would effectively do away with the statute of limitations, as Plaintiff could continue to request assistance and as long

9

as the Union refused to act, the statute of limitations would never serve to bar the filing of a complaint. The Court, therefore, rejects Plaintiff's argument that the continuing violation doctrine renders Plaintiff's complaint timely.

### III.  Conclusion

For the reasons set forth above, the Court finds that Plaintiff's complaint is time-barred and Defendant's motion to dismiss the complaint is, therefore, granted. An appropriate order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: October 29, 2007